UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LUKE A. MCFADDIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-CV-685-HBG |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 10]. Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Luke A. McFaddin ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On May 2, 2013, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on September 30, 2012. [Tr. 197, 218]. After his application was denied initially and upon

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 132]. A hearing was held on August 26, 2015. [Tr. 45-96]. On December 30, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 23-39]. The Appeals Council denied Plaintiff's request for review [Tr. 1-4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on December 9, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since September 30, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments (20 CFR 404.1520(c): degenerative disc disease.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), subject to the following additional limitations: such work (a) must not require more than occasional crawling, crouching, kneeling, stooping, balancing, or climbing of ladders, ropes, scaffolds, ramps, or stairs; (b) must not require more than frequent pushing or pulling with either upper or lower extremity; (c) must not require more than frequent reaching in any direction with either upper extremity; (d) must not require use of either upper extremity for more than frequent gross manipulation

(i.e., handling) or fine manipulation (i.e., fingering); (e) must be capable of being performed while using a hand-held assistive device for rough or uneven terrain, prolonged ambulation, or ascending/descending inclines/declines (noting that the contralateral upper extremity remains capable of being used to lift and/or carry up to the exertional limits of sedentary work); and (f) must not require more than occasional exposure to extreme cold or humidity, or more than frequent exposure to excessive vibration or to workplace hazards such as dangerous moving machinery with moving mechanical parts or unprotected heights.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on September 19, 1970 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2013, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 26-39].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

**IV.    DISABILITY ELIGIBILITY**

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant will only be considered disabled:

4

if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

On appeal, Plaintiff alleges that the ALJ erred in assessing Plaintiff's severe impairments at step two and failed to properly consider the opinion of treating physician, Thomas Cox, M.D., in assessing Plaintiff's RFC. The Court will address each alleged error in turn.

### A.     Step Two

Although the ALJ found that Plaintiff had a severe impairment of degenerative disc disease, Plaintiff argues that the ALJ failed to properly consider other severe impairments. [Doc. 17 at 6]. Plaintiff maintains that he suffers from additional impairments of the left lower extremity, the cervical spine, migraine headaches, and seizure activity, all of which Plaintiff avers are severe based on the medical evidence of record. [*Id.* at 6-7].

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a *de minimis* hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90). "The mere diagnosis of [an ailment] . . . says nothing about the severity of the condition." *Id.* at 863. Rather, the claimant must "produce or point to *some* evidence that indicates that an alleged impairment impacts his ability to perform basic work

6

activities." *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30, 2010), *adopted by*, No. 3:09-CV-317, 2010 WL 2836137 (E.D. Tenn. July 15, 2010) (emphasis in the original).

Here, the Court finds substantial evidence supports the ALJ's step two determination. As an initial matter, with regard to Plaintiff's contention that he has a severe impairment of the cervical spine, the ALJ explained that Plaintiff's severe impairment of degenerative disc disease specifically encompassed all spinal arthropathies—that is, discogenic disorders of the neck and/or back—substantiated by the record. [Tr. 26 n.1]. However, for the sake of judicial economy, and in addition to Plaintiff only listing "back problems" in response to agency forms requiring that he list the conditions that limit his ability to work, the ALJ explained that he collectively referred to Plaintiff's impairment as "degenerative disc disease" rather than individually notating the various medical terms used by multiple medical sources. [*Id.*]. Therefore, the Court finds that Plaintiff's cervical spine impairment was found severe.

As to the remaining impairments Plaintiff complains are severe,[2] Plaintiff argues that the ALJ did not provide sufficient reasons for finding his migraine headaches and seizure activity nonsevere. Plaintiff merely cites to two emergency room visits for migraines in January and February 2015, and one for reported seizure activity in July 2015, and summarily concludes that both impairments cause more than a slight abnormality. [Doc. 17 at 7]. The ALJ, however,

---

[2] In his decision, the ALJ noted that Plaintiff's alleged severe impairments of hypertension and migraine headaches was not alleged until two weeks prior to the hearing when Plaintiff's counsel filed a prehearing brief asserting same, and that only during Plaintiffs testimony was a seizure disorder alleged for the first time. [Tr. 26]. Despite Plaintiff's "eleventh-hour contentions," and twice verifying in agency forms that he had no additional impairments beyond "back problems," the ALJ explained that he nonetheless considered these new allegations, and, indeed, provided a thorough discussion, with citation to medical documentation, for finding these impairments nonsevere. [Tr. 26-28].

discussed Plaintiff's history of migraine headaches for which medical records demonstrated that the impairment occurred infrequently, was typically resolved with medication, and was related to situational and family stressors rather than medical reasons. [Tr. 27, 476-91, 531-33, 592, 642-54]. The ALJ also noted that following Plaintiff's emergency room visits in January and February 2015, Plaintiff reported to his treating physician, Dr. Cox, in a February 2015 follow-up visit that the symptoms that had caused him to present to the emergency room earlier in the month had resolved, and the frequency in which his headaches occurred had decreased. [Tr. 27, 626-28]. Dr. Cox's treatment notes thereafter contain few references to headaches and there is no indication that they worsened. [Tr. 27, 613-25].

The ALJ likewise discussed Plaintiff's assertion of seizure activity, noting that the first documentation of such activity occurred on July 16, 2015, six months prior to the ALJ's decision, when Plaintiff presented to the emergency room for seizure-like activity. [Tr. 28, 537-78]. Despite Plaintiff's testimony that at one point he experienced seizures on a "nightly" basis [Tr. 73], the ALJ correctly noted that there were no medical records substantiating Plaintiff's allegations other than this single emergency room visit. [Tr. 28]. Therefore, the ALJ reasonably concluded that the evidence failed to show Plaintiff's migraine headaches or seizure activity significantly limited Plaintiff's functional abilities for the requisite 12 month durational requirement. [Tr. 28]; *see* 20 C.F.R. §§ 404.1509 and 404.1521.

Finally, while Plaintiff argues for the first time that he also has a severe left lower extremity impairment—specifically, idiopathic peripheral neuropathy, hyperreflexia, and left foot drop—the Court finds that the ALJ properly considered imaging and nerve conduction studies of Plaintiff's lower extremities and related examination findings in assessing Plaintiff's RFC. [Tr. 32-33]. It is well settled that "even if the ALJ erred at step two, the ALJ's consideration of the cumulative

effect of [the claimant's] impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009); *see McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (holding that when an ALJ finds some impairments to be severe and continues the sequential evaluation process, it is "legally irrelevant" that other impairments are determined to be nonsevere, because "the ALJ must consider both severe and nonsevere impairments in the subsequent steps.") (citation omitted).

Accordingly, the Court finds the ALJ's severity finding at step two supported by substantial evidence, and Plaintiff's argument to the contrary is without merit.

**B. Opinion of Treating Physician, Thomas Cox, M.D.**

On May 11, 2015, Dr. Cox completed a form entitled, "Medical Opinion Re: Ability to do Work-Related Activities (Physical)." [Tr. 534-36]. Plaintiff submits that the findings rendered therein were not properly considered by the ALJ, and the ALJ did not provide "good reasons" for discounting the opinion. [Doc. 17 at 8-9].

Dr. Cox opined that Plaintiff had the following functional limitations since May 23, 2013: Plaintiff could lift and carry less than 10 pounds on an occasional basis; he could stand and walk about two hours in an eight-hour day, sit for about three hours in an eight-hour day, could sit for 30 minutes and stand 20 minutes before needing to change position, and would need to walk around every 30 minutes for five minutes at a time and lie down five times per day for at least an hour each time; he could never twist, stoop, crouch, or climb stairs or ladders; he could frequently use his left and right hands to reach overhead and in other directions, handle, finger, and feel, and could occasionally push and/or pull; he would need to avoid even moderate exposure to extreme cold and high humidity; and he would be absent from work more than four days per month. [Tr.

9

534-36].

Dr. Cox also wrote a letter, dated August 26, 2016, wherein he explained that Plaintiff had developed a degenerative neurological illness, characterized by transient memory loss, severe migraine headaches, and loss of muscle strength of the left leg, and that as a result, it was no longer safe for him to drive and his driver's license should be revoked. [Tr. 608].

The ALJ gave "some but limited weight" to Dr. Cox's medical opinion. [Tr. 36]. The ALJ found that the limitations concerning Plaintiff's restriction to standing no more than two hours per day and the need for a cane was consistent with the evidence, and the benefit of the doubt was further given to Plaintiff in regard to Dr. Cox's assessment of no more than frequent bilateral reaching, handling, fingering, pushing and pulling, and no more than occasional exposure to extreme cold or humidity. [*Id.*]. As to "the remaining, more drastic limitations," the ALJ concluded that these additional limitations were not justified by the evidence, including Dr. Cox's own treatment notes. [*Id.*]. And to the extent that Dr. Cox's letter constituted a "medical opinion" as defined by the regulations, the ALJ gave "some but very limited weight" to the letter because no medical source of record, including Dr. Cox, had diagnosed Plaintiff with any manner of degenerative neurological illnesses, memory loss was not evidenced at the hearing in which Plaintiff displayed excellent and detailed recollection of his past work history, the letter was relayed to Plaintiff rather than the expected proper authorities, and Plaintiff admitted he continued to drive. [*Id.*].

The Court observes that a medical opinion from a treating source generally enjoys controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c). When an ALJ does not give a treating source opinion controlling weight,

the ALJ must always give "good reasons" for the weight assigned, taking into consideration the length of treatment, frequency of examination, the nature and extent of the treatment relationship, the amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Nonetheless, the ultimate decision of disability rests with the ALJ. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

Plaintiff argues that in assigning Dr. Cox's opinion "some but limited weight," the ALJ did not consider that Dr. Cox had been treating Plaintiff since 2011, he prescribed Plaintiff medication, and also referred Plaintiff to other specialists. [Doc. 17 at 9]. Plaintiff does not expound upon why any of these particular considerations weigh in favor of giving Dr. Cox's opinion greater weight. Although opinions from treating sources generally enjoy more weight because such sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," 20 C.F.R. § 404.1527(c)(2), they do not receive automatic deference. Rather, a treating source's opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *Id.* Furthermore, while the ALJ was required to consider the regulatory balancing factors outlined in 20 C.F.R. § 404.1527(c)(1)-(6), the regulations "expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). Here, the ALJ found that Dr. Cox's opinion was not supported by the medical evidence, including Dr. Cox's own treatment notes, both of which constitute "good reasons." *See*

11

*Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."); *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 927 (E.D. Tenn. 2013) (recognizing the lack of objective medical evidence constitutes "good reason").

Plaintiff complains, however, that the ALJ failed to identify which evidence conflicted with Dr. Cox's opinion. [Doc. 17 at 9]. To the contrary, the ALJ's discussion of the evidence prior to weighing Dr. Cox's opinion provides context to the ALJ's subsequent finding that Dr. Cox's opinion conflicted with the record. *See* 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight" the opinion deserves).

The ALJ found that overall, imaging studies were "mild." [Tr. 32-33]. As to Plaintiff's spinal condition, CT scans in 2013 and 2014 found no significant compressive pathology, arthrodesis of the spine at L5-S1 was solid, and "mild" and "minimal" degenerative changes were noted with no indication of neural compromise. [Tr. 32, 508-14, 591]. An MRI from January 2014 showed "no obvious evidence of residual neurologic compression or comprise," and examination findings the following month yielded negative straight-leg raising tests, and Plaintiff's symptoms were deemed not indicative of nerve root distribution. [Tr. 32, 440-41, 529-30]. Additionally, a March 2014 x-ray exhibited mild bulging but no neural impingement. [Tr. 32, 448-49]. Although Plaintiff continued to complain of radiculopathy in his lower extremities, the ALJ observed that an EEG nerve conduction study returned negative for neuropathy and radiculopathy, prompting examining orthopedist specialist, Joel Norman, M.D., to conclude that Plaintiff's complaints could not be explained. [Tr. 32, 529-30].

As to Plaintiff's complaints of excessive falling, loss of balance, disorientation, and seizure-like activity, the ALJ explained that there was also little objective evidence to substantiate

Plaintiff's allegations in this regard. [Tr. 32]. Indeed, a February 2014 MRI of the thoracic spine to check for the presence of lesions revealed minimal spondylosis; a March 2014 cervical spine x-ray showed no neural impingement and a CT scan of Plaintiff's brain performed that same month was normal; sleep apnea testing performed in August 2014 revealed mild obstruction that required no significant treatment; and a September 2014 EMG was likewise normal. [Tr. 32, 407-14, 423, 425-32, 436-38, 440-42, 448-49]. Like Dr. Norman, examining neurologist Darrell Thomas, M.D., similarly concluded that Plaintiff's complaints could not be explained based on extensive medical testing. [Tr. 436-38]. Subsequent brain CT and MRI scans, in addition to EEG testing, in 2015 similarly failed to account for Plaintiff's complaints of weakness, falling, and seizure activity. [Tr. 33, 337-482-85, 500-02, 564-66, 590]. This evidence, and in particular Dr. Norman's conclusion, sharply contrasts with Dr. Cox's opinion that Plaintiff suffers from a degenerative neurological illness. Additionally, the lack of overall objective evidence corroborating Dr. Cox's opinion cast doubt as to the consistency and supportability of his findings.[3] *See* 20 C.F.R. § 404.1527(c)(3)-(4); *Hatmaker*, 965 F. Supp. 2d at 927.

Further undermining Dr. Cox's opinion was the ALJ's credibility assessment in which the ALJ considered Plaintiff's work history and receipt of unemployment benefits. [Tr. 33-34]. The ALJ noted that Plaintiff stopped working at the time of his alleged onset date not because of his

---

[3] Plaintiff suggests that because a January 2014 MRI of the lumbar spine revealed "moderate" facet hypertrophy at L1-2, L3-4, and L4-5 and "moderate" bilateral L5-S1 neural foraminal stenosis, in addition to a January 2015 x-ray revealing "mild to moderate" disc space narrowing at L5-S1, the ALJ's observation that Plaintiff's imaging findings were "mild" is a mischaracterization of the evidence. [Doc. 17 at 9]. The ALJ's conclusion, however, took into account the numerous CT scans, MRIs, and x-rays performed between 2013 and 2015, a majority of which did reveal mild to normal findings, and examining physicians concluded that extensive diagnostic testing failed to account for Plaintiff's complaints. Plaintiff's citation to a single MRI and x-ray does not taint the ALJ's conclusion which the Court finds to be reasonable based on the totality of the evidence.

impairments but because he was laid off from work. [Tr. 33, 218]. To be found disabled, a claimant's inability to perform substantial gainful activity must be caused by a medically determinable impairment rather than some other cause. 42 U.S.C. § 423(d)(1)(A). Moreover, the ALJ observed that Plaintiff received unemployment benefits after his alleged onset date and into the fourth quarter of 2013, which required that Plaintiff certify he is willing and able to work and is actively searching for employment. [Tr. 33-34, 201, 211]. The receipt of unemployment benefits is an appropriate factor an ALJ may take into account when assessing a claimant's credibility. *Webster v. Colvin*, No. 3:13-CV-497-TAV-HBG, 2014 WL 4095341, at *9 (E.D. Tenn. Aug. 19, 2014).

Finally, Dr. Cox's opinion was inconsistent with the other medical opinions of record, including consultative examiner Stephen K. Goewey, M.D., who concluded that Plaintiff could generally perform sedentary work, [Tr. 373-76], and non-examining state agency physicians Karla Montague-Brown, M.D., and Carol Lemeh, M.D., who found Plaintiff could perform light work with additional limitations [Tr. 102-03, 113-116]. The ALJ gave great weight to Dr. Goewey's opinion, finding it consistent with his own examination findings and the overall evidence of record. [Tr. 35]. While the ALJ generally agreed with the postural limitations assessed by Dr. Montague-Brown and incorporated many of them into Plaintiff's RFC, greater weight was given to Dr. Lemeh's opinion, whose opinion assessed the same postural, pushing/pulling, vibration, and workplace hazards restrictions that have been incorporated into Plaintiff's RFC, as her opinion was based on a more extensive review of the medical records and more closely aligned with Dr. Goewey's opinion. [*Id.*]. The ALJ explained, however, that given later generated evidence at the hearing level, which did not demonstrate a significant alteration of Plaintiff's functional capacity, Plaintiff was nonetheless given the benefit of the doubt and some weight was also given to Dr.

14

Cox's opinion. [Tr. 35-36]. Thus, the ALJ further reduced Plaintiff's RFC to the sedentary exertional level.

The Court concludes that the lack of corroborating objective evidence, Plaintiff's credibility, competing medical opinions, and the lack of substantiated findings within Dr. Cox's own treatment notes, satisfy the "good reasons" requirement and thereby "make[s] clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Accordingly, the Court finds that the ALJ properly considered and weighed Dr. Cox's opinion, and Plaintiff's assignment of error is not well-taken.

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment of the Pleadings [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge